**Rick Klingbeil, OSB #933326**
**RICK KLINGBEIL, PC**
520 SW Sixth, Suite 950
Portland, OR 97204
Ph: (503) 473-8565
rick@klingbeil-law.com

**Brady Mertz, OSB #970814, WSB #32558**
2285 Liberty St NE
Salem OR  97301
Ph: (503) 385-0121
brady@bradymertz.com

**Brooks Cooper, OSB #941772, WSB #32460**
520 SW 6th Ave., Ste. 914
Portland OR  97204
Ph: (971) 645-4433
brooks@bcooper-law.com

## IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **VICKI VAN VALIN, on behalf of herself and all others similarly situated within the state of Oregon;  NEIL MERTZ on behalf of himself and all others similarly situated within the state of Washington;**<br><br>Plaintiffs,<br>v.<br><br>**GOOGLE, INC., a Delaware corporation;**<br><br>Defendant. | No. CV 10-557 ST<br><br>**AMENDED CLASS ACTION ALLEGATION COMPLAINT**<br><br>**(Invasion of Privacy; 18 U.S.C. § 2511, et seq.; 47 U.S.C. § 605)**<br><br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs individually and on behalf of the below-described class amend their complaint, and allege as follows:

### NATURE OF THE CASE

1.     This is a class action. Plaintiffs, on behalf of themselves, and all similarly situated persons seek recovery of monetary damages, penalties, attorney fees, and other relief based on certain acts of defendant, including invasion of their legally protected privacy interests, acquisition of personal and private information without permission or consent, and violation of privacy and security rights granted by 18 U.S.C. § 2511, et seq. and 47 U.S.C. § 605.

## JURISDICTION AND VENUE

2.     This court has original jurisdiction over this class action under 18 U.S.C. § 1332(d) the Class Action Fairness Act ("CAFA").  The CAFA explicitly provides for the original jurisdiction of the federal court in any class action in which any member of the class is a citizen of a state different from any Defendant, and where the matter in controversy exceed the sum of $5 million exclusive of interests and costs.  Plaintiffs allege that the claims of individual class members in this action exceeds $5 million in the aggregate, exclusive of interest and costs, and that the total number of members of the proposed class is greater than 100, as required by 28 U.S.C. § 1332(d)(2), (5). As set forth below, plaintiffs are citizens of Oregon and Washington, and defendant is a Delaware corporation with its headquarters and main office located in California.  This court also has jurisdiction under 28 U.S.C. § 1331 because plaintiffs have alleged a violation of 18 U.S.C. § 2511, et seq.

3.     Venue lies within this District pursuant to 28 U.S.C. 1391(b)-(c) in that defendant conducts business in this District; certain acts giving rise to the claims asserted in this Complaint occurred within this District; the actions of Defendants alleged in this Complaint caused damages to plaintiff Van Valin and a substantial number of class members within this District, and plaintiff Vicki Van Valin resides within this District.

## THE PARTIES

4.      Plaintiff Vicki Van Valin ("Van Valin") is an individual residing in Oregon.  During the class period, Van Valin used and maintained and used an open wireless internet connection ("WiFi connection") at her home. Van Valin used the wireless internet connection to transmit and receive personal and private data, including but not limited to personal emails, personal internet research and viewing, work-related emails, work-related documents, work-related internet research and viewing, credit card information, banking information, personal identification information such as social security numbers, date of birth, medical information, and telephone calls made using a voice over internet (VOIP) protocol.

5.      Plaintiff Neil Mertz ("Mertz") is an individual residing in the state of Washington. During the class period, Mertz used and maintained and used an open wireless internet connection ("WiFi connection") at his home. Mertz used the wireless internet connection to transmit and receive personal and private data, including but not limited to personal emails, personal internet research and viewing, credit card information, banking information, personal identification information such as social security numbers, date of birth, and medical information.

6.      Defendant Google Inc. ("Google") is a multinational public cloud computing and internet search technologies corporation. Google hosts and develops a number of Internet-based services and products. It was first incorporated as a privately held company on September 4, 1998, with its initial public offering to follow on August 19, 2004. Google is a Delaware corporation with its home office in the state of California. The company's stated mission from the outset of its existence has been "to organize the world's information and make it universally accessible and useful."

## DEFENDANT'S CONDUCT

7.      Google also offers a variety of location-based services, such as Google Latitude,

Google Toolbar with My Location, and location aware browsing through the Mozilla Firefox browser using Google Maps. Collectively, t\he underlying technology is called Google Location Service ("GLS"). Developers, websites, and programs can use GLS to gain access to a user's approximate location. This allows an important business advantage because information, such as mapping, social networking, and advertising can then be keyed to the user's specific location.

8.      One of Google's web-based and web-accessed internet services is Google Street View ("GSV"). GSV is a technology featured in the Google Maps and Google Earth products that provides panoramic views from various positions along many streets in the United States and throughout the world. It was launched on May 25, 2007, originally only in several cities in the United States, and has since gradually expanded to include more cities and rural areas throughout the states of Oregon and Washington, the United States, and worldwide. GSV displays images taken from a fleet of specially adapted vehicles ("GSV vehicles"). Areas not accessible by a full-sized vehicle, such as pedestrian areas, narrow streets, alleys and ski resorts are sometimes covered by Google Trikes (tricycles) or a snowmobile.

9.      On each of the GSV vehicles there are typically nine directional cameras for 360° views at a height of about 2.5 meters, GPS units for positioning, three laser range scanners for the measuring of up to 50 meters 180° in the front of the vehicle. There are also 3G/GSM/Wi-Fi antennas for scanning 3G/GSM and Wi-Fi broadcasts (sometimes called "hotspots") and associated electronic hardware for the capture and storage of wireless signals and data ("WiFi data").

10.     In 2006, Google generated or incorporated programming code into the electronic hardware on its GSV vehicles that sampled and decoded all categories of publicly broadcast WiFi data. This type or class of program is commonly called a packet analyzer, also known as a network analyzer, protocol analyzer or packet sniffer, or for particular types of networks, an Ethernet sniffer

or wireless sniffer ("wireless sniffer"). As data is transmitted across the wireless network, the sniffer secretly captures each packet (or discreet package) of information, then decodes and analyzes its content according to the appropriate specifications.

11.     To view data secretly captured by a wireless sniffer in readable or viewable form, after being captured and stored on digital media, it must be decoded. Because the data "as captured" by the wireless sniffer is typically not readable by the public absent special and sophisticated decoding or processing, it is reasonably considered and understood to be private, protected information by users and operators of home-based WiFi systems.

12.     When Google created its data collection systems on the GSV vehicles, it included wireless packet sniffers that, in addition to collecting the user's unique or chosen WiFi network name (SSID information), the unique number given to the user's hardware used to broadcast a user's WiFi signal (MAC address), and other information, the systems also collected data consisting of all or part of any documents, emails, video, audio, VOIP, and other content being sent over the network by the user ("payload data").

13.     After Google collected and decoded the data collected from users (including payload data) it stored the information on its servers. On information and belief, hundreds if not thousands of Google employees throughout the United States and the world have access to data maintained on Google's servers, including the decoded payload data collected by the GSV vehicles.

14.     Users had an expectation of privacy with respect to the payload data collected and decoded by Google.  Because the GSV packet sniffing data collection was done in secret, and without requiring the device used by Google to be associated with the user's device, users could not, and did not give their consent to Google's activities.

15.     On November 26, 2008 United States Patent Application No. 12/315,079, entitled

"Wireless Network-Based Location Approximation" was filed with the United States Patent and Trademark Office.  On January 28, 2010 Patent Application No. 12/315,079 was published as US 2010/0020776 A1 ('776 Application").  Google Inc. was the assignee of the '776 Application. The '776 Attached is as Exhibit "A."

16.    The '776 Application discloses a method devised by Google for gathering, analyzing, and using data sent by users over their wireless routers and other wireless access points (collectively "wireless APs").  One way the data can be gathered, Google claims, is through a wireless receiver, using a sensitive high gain antenna, operating in a "sniffer" mode to obtain all types of data transmitted by a user's wireless AP.  The data so gathered, explains Google, can then be analyzed or decoded with an "analyzer program."

17.    The '776 Application shows that with data collected from a user's wireless AP, Google can determine, among other things (1) the vendor and model of their wireless AP device, (2) the  geographic coordinates, and therefore the location or street address where the wireless AP is located, and (3) the approximate location of the wireless AP within the user's residence or business. The invention also provides the capability for Google, or others with access to the data collected and analyzed as described by Google, to directly correlate the data, including the user's payload data, with a precise location, such as geographic coordinates or a street address.

18.    As disclosed in the '776 Application, the more types and greater the quantity of WiFi data obtained, decoded, and analyzed by Google from any particular user, the higher its "confidence level" in the calculated location of that user's wireless AP. Collection, decoding, and analysis of a user's payload data would, therefore, serve to increase the accuracy, value, useability, and marketability of Google's new method for wireless network-based location approximation, and any service that relied upon that method, such as the Google Location Service.

19.    The '776 Application also discloses that the confidence level in determining the location of a user's wireless AP can be enhanced or increased by decoding, then analyzing what types of data has been captured (i.e. management frames, control frames, or payload data), then reviewing the decoded data to determine whether it arrived in an intact or corrupted state.

20.    The '776 Application also discloses that the receiver or device used to collect the WiFi data "may be placed in a vehicle and data may be obtained continuously or at predetermined time increments" and that the rate of speed of the vehicle "may be factored into the analysis."

21.    Google has employed one or more of the methods disclosed in the '776 Application to collect, decode, analyze, store, and make beneficial use of wireless data (including payload data) it collected from plaintiffs and class members.

## PLAINTIFFS VAN VALIN'S EXPERIENCE

22.    Since the time Google began collecting users' payload data with its GSV vehicles, plaintiff Van Valin has consistently maintained an open wireless internet connection at her residence.

23.    Van Valin's residence is located on and adjacent to a street for which a GSV vehicle has collected data on at least one occasion since May 25, 2007.

24.    Van Valin works in the high technology field, and works from her home over her internet-connected computer a substantial amount of time. In connection with her work and home life, Van Valin transmits and receives a substantial amount of data from and to her computer over her wireless internet connection ("wireless data"). A significant amount of the wireless data is also subject to her employer's non-disclosure and security regulations.

25.    Unauthorized access to Van Valin's personal and work-related data invades her objectively reasonable expectations of privacy, and invades her rights to privacy.

26.     On information and belief, a GSV vehicle has collected, and defendant has stored, and decoded Van Valin's wireless data on at least one occasion.

## PLAINTIFFS MERTZ'S EXPERIENCE

27.     Since the time Google began collecting users' payload data with its GSV vehicles, plaintiff Mertz has consistently maintained an open (non-password protected) wireless internet connection at his residence.

28.     Mertz's residence is located on a street for which a GSV vehicle has collected data on at least one occasion since May 25, 2007.

29.     Mertz transmits and receives a substantial amount of data from and to his computer over his wireless internet connection ("wireless data").

30.     Unauthorized access to Mertz's personal and work-related data invades his objectively reasonable expectations of privacy, and invades his rights to privacy.

31.     On information and belief, a GSV vehicle has collected, and defendant has stored, and decoded Mertz's wireless data on at least one occasion.

## CLASS ALLEGATIONS

32.     Plaintiff Van Valin brings this action on her own behalf, and on behalf of the following sub-Class:

> All residents within the state of Oregon whose wireless data was captured, stored, and decoded or decrypted by defendant.

33.     Plaintiff Mertz brings this action on his own behalf, and on behalf of the following sub-Class:

> All residents within the state of Washington whose wireless data was captured, stored, and decoded or decrypted by defendant.

34.     Excluded from this class are defendant, any person, firm, trust, corporation, officer,

director, or other individual or entity in which defendant has a controlling interest or which is related to or affiliated with defendant, and the legal representatives, heirs, successors-in-interest or assigns of any excluded party.

35.     Plaintiffs and members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.

36.     This action involves questions of law and fact common to plaintiff Van Valin and all members of the Oregon sub-Class which include:

(a)     Whether defendant has engaged in an unlawful invasion of plaintiff's and class members' privacy interests;

(b)     The appropriate amount of nominal damages necessary to compensate plaintiff and class members for defendant's invasion of their privacy interests;

(c)     The appropriate amount of punitive damages under Oregon law necessary punish defendant for its conduct, and prevent further, similar conduct by defendant and others in the future;

(d)     Whether defendant's conduct violated of one or more of the provisions of 18 U.S.C. § 2511 et seq.;

(e)     The appropriate amount of statutory damages necessary to compensate plaintiff and the class members under 18 U.S.C. § 2520;

(f)     The appropriate amount of punitive damages necessary to punish defendant for its conduct, and prevent further, similar conduct, pursuant to 18 U.S.C. § 2520;

(g)     The appropriate amount of costs and attorney fees that should be reimbursed or paid to plaintiff and the class under 18 U.S.C. § 2520;

(h)     Whether defendant's conduct violated of one or more of the provisions of 47

U.S.C. § 605 et seq.;

(i)    The appropriate amount of statutory damages necessary to compensate plaintiff and class members under 47 U.S.C. § 605 (e)(3);

(j)    The appropriate amount of costs and attorney fees that should be reimbursed or paid to plaintiff and the class under 47 U.S.C. § 605 (e)(3);

(k)    Whether plaintiff and the class members are entitled to injunctive relief relating to the proper and appropriate time and manner of retention or destruction of the wireless data captured by defendant and belonging to plaintiff and the class members.

(l)    Whether plaintiff and the class members are entitled to injunctive relief enjoining defendant from obtaining any particular class or type of wireless data from any wireless network or wireless AP within the state of Oregon.

37.    This action involves questions of law and fact common to plaintiff Mertz and all members of the Washington sub-Class which include:

(a)    Whether defendant has engaged in an unlawful invasion of plaintiff's and class members' privacy interests;

(b)    The appropriate amount of nominal damages necessary to compensate plaintiff and the class members for defendant's invasion of their privacy interests;

(c)    Whether defendant's conduct violated of one or more of the provisions of 18 U.S.C. § 2511 et seq.;

(d)    The appropriate amount of statutory damages necessary to compensate plaintiff and the class members under 18 U.S.C. § 2520;

(e)    The appropriate amount of punitive damages necessary to punish defendant for its conduct, and prevent further, similar conduct, pursuant to 18 U.S.C. § 2520;

(f)     The appropriate amount of costs and attorney fees that should be reimbursed or paid to plaintiff and the class under 18 U.S.C. § 2520;

(g)     Whether defendant's conduct violated of one or more of the provisions of 47 U.S.C. § 605 et seq.;

(h)     The appropriate amount of statutory damages necessary to compensate plaintiff and class members under 47 U.S.C. § 605 (e)(3);

(i)     The appropriate amount of costs and attorney fees that should be reimbursed or paid to plaintiff and the class under 47 U.S.C. § 605 (e)(3);

(j)     Whether plaintiff and the class members are entitled to injunctive relief relating to the proper and appropriate time and manner of retention or destruction of the wireless data captured by defendant and belonging to plaintiff and the class members.

(k)     Whether plaintiff and the class members are entitled to injunctive relief enjoining defendant from obtaining any particular class or type of wireless data from any wireless network or wireless access point within the state of Oregon.

38.     Plaintiff Van Valin's claims are typical of the claims of the members of the Oregon sub-Class, and plaintiff Mertz's claims are typical of the claims of the members of the Washington sub-Class.

39.     The named plaintiffs are willing and prepared to serve the Court and proposed sub-Class in a representative capacity with all of the required material obligations and duties.  Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or which directly and irrevocably conflict with the other members of the Class.

40.     The self-interests of the named Class representatives are co-extensive with, and not antagonistic to those of the absent Class members. The proposed representative will represent and

protect the the interests of the absent Class members.

41.    The named plaintiffs have engaged the services of the counsel listed below.  Counsel are experienced in litigation, complex litigation, and will protect the rights of and otherwise effectively represent the named Class representatives and absent Class members.

42.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable.  The damages suffered by individual class members may be relatively small, the expense and burden of individual litigation makes it inefficient and ineffective for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this case as a class action.

43.    The prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual members, which would establish incompatible standards of conduct for defendant.  Defendant has acted on grounds that apply generally to the Class, making equitable and monetary relief appropriate to the Class as a whole.

## FIRST CLAIM FOR RELIEF

### (Invasion of Legally Protected Privacy Interests - Oregon Sub-Class)

44.    Plaintiff Van Valin realleges paragraphs 1 through 43 and further alleges:

45.    Defendant's conduct was an intentional intrusion upon plaintiff's and class members' private affairs or concerns, and would be offensive to a reasonable person.

46.    Defendant's conduct constituted the tort of invasion of privacy with respect to plaintiff and class members.

47.    Plaintiff and class members are entitled to nominal damages to compensate for defendant's invasion of their privacy.

48.    The Oregon sub-Class in entitled to recover punitive damages in an amount to be

determined by the jury, but sufficient to prevent the same or similar conduct by defendant and others in the future.

## SECOND CLAIM FOR RELIEF

### (Invasion of Privacy - Washington Sub-Class)

49.    Plaintiff Mertz realleges paragraphs 1 through 43 and further alleges:

50.    Defendant's conduct was an intentional intrusion upon plaintiff's and class members' private affairs or concerns, and would be offensive to a reasonable person.

51.    Defendant's conduct constituted the tort of invasion of privacy with respect to plaintiff and class members.

52.    Plaintiff and class members are entitled to nominal damages to compensate for defendant's invasion of their privacy.

## THIRD CLAIM FOR RELIEF

### (18 U.S.C. § 2511 et seq.)

53.    Plaintiffs reallege paragraphs 1 through 43, and further allege:

54.    Defendant's conduct was a violation of 18 U.S.C. § 2511.

55.    Pursuant to 18 U.S.C. § 2520, each of the plaintiffs and each class Member is entitled to damages and relief as follows:

(a)    for each plaintiff and each class member, statutory damages of whichever is the greater of $100 each day that individual's data was obtained by defendant, or $10,000 per violation suffered by that individual;

(b)    punitive damages in an amount to be determined by the jury, but sufficient to prevent the same or similar conduct by defendant and others in the future;

(c)    reasonable attorneys' fees and other litigation costs reasonably incurred.

## FOURTH CLAIM FOR RELIEF

### (47 U.S.C. § 605)

56.      Plaintiffs reallege paragraphs 1 through 43, and further allege:

57.      The wireless data and information transmitted by plaintiffs and class members constituted interstate communications by wire or radio.

58.      Google was not entitled to receive the payload data it captured from plaintiffs and class members.  After Google received, or assisted in receiving the intercepted communications and data, it used the information for its own benefit or for the benefit of another not entitled thereto, in connected with one or more of Google's businesses, location based services, and/or as described in part in Google's United States Patent Application No. 12/315,079.

59.      Google manufactured, assembled, or modified electronic, mechanical, or other devices or equipment knowing or having reason to know that the devices or equipment were intended for activities prohibited by 47 U.S.C. § 605(a), in violation of 47 U.S.C. § 605(e)(4).

60.      Defendant's conduct was willfully committed and for the purposes of direct or indirect commercial advantage or private financial gain.  Plaintiffs and class members are, therefore, entitled to an increase of damages to the amount of $100,000 for each violation of 47 U.S.C. § 605.

61.      Pursuant to 47 U.S.C. § 605(e), each of the plaintiffs and each class Member is entitled to damages and relief as follows:

    (a)  for each plaintiff and each class member, statutory damages of not less than $1,000 and not more than $10,000 each time that individual's data was obtained or captured by defendant.  47 U.S.C. § 605(e)(3)(C)(i)(II);

    (b)  an increase of statutory damages to up to $100,000 per violation, per

**AMENDED CLASS ACTION ALLEGATION COMPLAINT**
**(Invasion of Privacy, 18 U.S.C. § 2511 et seq., 47 U.S.C. §605)**

individual. 47 U.S.C. § 605(e)(3)(C)(ii);

(c)    a reasonable attorneys' fee and other litigation costs reasonably incurred.

## REQUEST FOR RELIEF

Plaintiffs request a judgment against defendant and in favor of plaintiffs and class members:

A.    Certifying this action as a class action as set forth above;

B.    Compensating plaintiffs and all class members with nominal damages for invasion of their privacy interests;

C.    Punishing defendant by requiring it to pay punitive damages to Van Valin and the Oregon sub-class for its intentional invasion of their privacy interests;

D.    Compensating each plaintiff and class member with statutory damages under 18 U.S.C. § 2520 equal to the greater of $100 for each time any plaintiff's or class member's data was obtained by defendant, or $10,000 per violation suffered by each plaintiff or class member;

E.    Punishing defendant for its wrongful conduct by requiring it to pay punitive damages under 18 U.S.C. § 2520 in an amount to be determined by the jury, but sufficient to prevent the same or similar conduct by defendant and others in the future;

F.    Compensating plaintiffs and the class members for reasonable attorneys' fees and other litigation costs reasonably incurred in pursuing their remedies under 18 U.S.C. § 2520;

G.    Compensating each plaintiff and class member with statutory damages under 47 U.S.C. § 605 of not less than $1,000 and not more than $10,000 for each time defendant captured or obtained any plaintiff's or class member's data;

H.    Compensating each plaintiff and class member with increased statutory damages of up to $100,000 per individual, pursuant to 47 U.S.C. § 605(e)(3)(C)(ii);

I.    Compensating plaintiffs and the class members for reasonable attorneys' fees and

other litigation costs reasonably incurred by plaintiffs and the class in pursuing their remedies under

47 U.S.C. § 605.

     J.     Compensating plaintiffs and the class members for all other costs, relief, and

damages legally available under the claims and allegations set forth in this Amended Complaint.

     **Dated:** June 2, 2010.

                         RICK KLINGBEIL, PC

                         _____

                         Rick Klingbeil
                         OSB #933326
                         Ph: (503) 473-8565
                         rick@klingbeil-law.com

Case 3:10-cv-00557-ST    Document ████████████████████████████████████████

US 20100020776A1

(19) **United States**
(12) **Patent Application Publication** (10) Pub. No.: **US 2010/0020776 A1**
Youssef et al. (43) **Pub. Date:** **Jan. 28, 2010**

(54) **WIRELESS NETWORK-BASED LOCATION APPROXIMATION**

(75) Inventors: **Adel Amin Youssef**, Milpitas, CA (US); **Arunesh Mishra**, Mountain View, CA (US); **Sam Liang**, Palo Alto, CA (US); **Michael Chu**, Los Altos, CA (US); **Ravi Jain**, Palo Alto, CA (US)

Correspondence Address:
**GOOGLE**
**Lerner, David, Littenberg, Krumholz & Mentlik, LLP**
**600 South Avenue West**
**Westfield, NJ 07090 (US)**

(73) Assignee: **Google Inc.**, Mountain View, CA (US)

(21) Appl. No.: **12/315,079**

(22) Filed: **Nov. 26, 2008**

**Related U.S. Application Data**

(60) Provisional application No. 60/990,488, filed on Nov. 27, 2007, provisional application No. 61/196,167, filed on Oct. 15, 2008.

**Publication Classification**

(51) **Int. Cl.**
| | |
|---|---|
| *H04W 8/02* | (2009.01) |
| *H04W 24/00* | (2009.01) |
| *H04W 4/02* | (2009.01) |

(52) **U.S. Cl.** ...................................... **370/338**; 455/456.3

(57) **ABSTRACT**

The invention pertains to location approximation of devices, e.g., wireless access points and client devices in a wireless network. Location estimates may be obtained by observation/ analysis of packets transmitted or received by the access point. For instance, data rate information associated with a packet is used to approximate the distance between a client device and the access point. This may be coupled with known positioning information to arrive at an approximate location for the access point. Confidence information and metrics about whether a device is an access point and the location of that device may also be determined. Accuracy of the location determination may be affected by factors including propagation and environmental factors, transmit power, antenna gain and diversity, etc. A location information database of access points may employ measurements from various devices over time. Such information may identify the location of client devices and provide location-based services to them.



Patent Application Publication    Jan. 28, 2010  Sheet 1 of 6    US 2010/0020776 A1



FIG. 1

100



FIG. 2

Patent Application Publication    Jan. 28, 2010   Sheet 3 of 6    US 2010/0020776 A1



FIG. 3



FIG. 4    400



FIG. 5

Patent Application Publication     Jan. 28, 2010  Sheet 6 of 6     US 2010/0020776 A1



FIG. 6A

<u>600</u>

FIG. 6B

<u>602</u>

AMENDED CLASS ACTION ALLEGATION COMPLAINT     Exhibit "A"

US 2010/0020776 A1

Jan. 28, 2010

1

## WIRELESS NETWORK-BASED LOCATION APPROXIMATION

### CROSS-REFERENCE TO RELATED APPLICATIONS

[0001]    This application claims the benefit of the filing date of United States Provisional Patent Application No. 61/196, 167, entitled "Wireless Network-Based Location Approximation," attorney docket GOOGLE 3.8-020, filed Oct. 15, 2008, and of United States Provisional Patent Application No. 60/990,488, entitled "Accuracy Analysis of Wireless Base Station Location," attorney docket number 2525.1180000, filed Nov. 27, 2007, the entire disclosures of which are hereby incorporated herein by reference.

### BACKGROUND OF THE INVENTION

[0002]    1. Field of the Invention
[0003]    The present invention relates generally to approximating the location of electronic devices such as wireless access points ("APs") and client devices.
[0004]    2. Description of Related Art
[0005]    Wireless networks offer a wide variety of services using a number of different architectures. Client devices such as mobile phones, laptops and PDAs may connect to APs via cellular/PCS networks as well as wireless local area networks ("WLANs") such as IEEE 802.11, Bluetooth® or other Wi-Fi® networks.
[0006]    Location-based services can leverage the physical location of a client device to provide an enhanced service or experience for a user. A location-based service may determine the location of the user by using one of several technologies for determining position, then use the location and possibly other information to provide personalized applications and services.
[0007]    Conventional cellular/PCS networks may position their APs (e.g., base stations) in accordance with specific coverage criteria. The locations of these base stations may be placed at known locations. Client devices in such networks may include GPS-enabled handsets, which enable accurate determination of the location of the devices.
[0008]    In contrast, WLANs networks may include APs which are relatively small or portable (e.g., mini base stations or wireless routers), and which may be placed at locations as needed. The exact locations of APs in this situation may not be known. For instance, a corporate wireless network may have a number of APs distributed across the corporate campus. So long as the APs provide adequate coverage, a general knowledge of their location such as which building they are in may suffice.
[0009]    Another type of scenario where the specific location of the APs may not be known is in a building-wide (e.g., an airport terminal) or city-wide mesh or ad-hoc WiFi network. In such cases, users may access APs set up by one or more service providers.
[0010]    In such cases, the APs and client devices themselves may not be GPS-enabled. Or the devices may be located indoors or in other environments where GPS does not operate. Thus, it may be difficult or impossible to offer location-based services without some way to determine the positions of the APs and/or the client devices.

### BRIEF SUMMARY OF THE INVENTION

[0011]    The present invention provides systems and methods for estimating AP locations as well as estimating the confidence and accuracy for such locations. Using such information, the locations of client devices may also be determined, which in turn enables the use of location-based services.
[0012]    In accordance with an embodiment of the present invention, a computer-implemented method of estimating the location of a wireless device is provided. The method comprises obtaining a packet of data transmitted from a first wireless device to a second wireless device; determining whether one of the first and second wireless devices is a wireless access point; determining the data rate of the transmitted data packet; if one of the first and second wireless devices is the wireless access point, then evaluating the determined data rate against a predetermined criterion; and assigning an estimated location to the wireless access point based upon the evaluation.
[0013]    In one alternative, the predetermined criterion is stored in a database such as in a look-up table. Here, the evaluation includes identifying a distance in the look-up table associated with the determined data rate. In one example, the transmitted data packet is obtained by a client device and the method further includes identifying a distance associated with the data rate, wherein the distance is used as a separation between the first wireless device and the client device. Here, if the client device is at a known location, then the method may further comprise assigning a distance between the wireless access point and the client device to be the same as the distance between the first wireless device and the client device; and triangulating a position of the wireless access device using the known location of the client device, the distance between the first wireless device and the client device and the distance between the wireless access point and the client device to obtain the estimated location. In this example, the client device may use a GPS receiver to obtain the known location.
[0014]    In another alternative, the predetermined criterion includes a worst-case distance estimate based upon at least one parameter. In an example, the at least one parameter includes one or more of a channel propagation characteristic, a transmitter characteristic and a receiver characteristic.
[0015]    In yet another alternative, the method further comprises revising the estimated location of the wireless access point based upon multiple data packets sent or received by the wireless access point.
[0016]    In another alternative, the method further comprises determining a position of the client device based upon the estimated location of the wireless access point and providing a location-based service to the client device based on the determined position.
[0017]    In accordance with another embodiment of the present invention, a computer-implemented method of estimating confidence in a status of a wireless device is provided. The method comprises obtaining one or more packets of data transmitted from a first wireless device to a second wireless device; evaluating the one or more transmitted data packets to identify a frame type for each respective data packet; identifying the first wireless device or the second wireless device as a wireless access point based upon the identified frame type for at least one of the data packets; and assigning a confidence value to the identification of the wireless access point.
[0018]    In one alternative, if the frame type of at least one of the respective data packets is a management frame, then identifying the first wireless device as a wireless access point. In this case the method sets the confidence value for the

2

identification of the wireless access point to a maximum confidence value. Optionally, if the frame type of at least one of the respective data packets is not the management frame, then the method evaluates whether the frame type of any of the respective data packets is a control frame. Here, if the frame type of at least one of the respective data packets is the control frame, then the method identifies the first wireless device as the wireless access point and sets the confidence value for the identification of the wireless access point to a value between the maximum confidence value and a minimum confidence value.

[0019]   In another alternative, identifying the first wireless device or the second wireless device as the wireless access point further includes analyzing a number of frames transmitted or received by each device

[0020]   In accordance with another embodiment of the present invention, a computer-implemented method of estimating confidence in a location of a wireless device is provided. Here, the method comprises obtaining one or more packets of data transmitted from a first wireless device to a second wireless device; determining that the first or second wireless device is a wireless access point based upon the transmitted packets; determining an estimated location of the wireless access point; and assigning a confidence value to the estimated location.

[0021]   In one alternative, the confidence value represents a percentage likelihood that the wireless access point is contained within a specified area of interest. In another alternative, the estimated location is based on multiple data points. In this case, a confidence code may be applied to each data point. In one example, the confidence code for each data point is calculated using a weighted function. In another example, the confidence code for each data point represents a likelihood that that data point is valid or an outlier.

[0022]   In yet another embodiment of the present invention, an apparatus for use in a wireless network comprises memory for storing information associated with a plurality of devices in the wireless network, means for communicating with one or more of the plurality of devices in the wireless network and a processor. The processor is operable to estimate a location of an access point device in the wireless network based upon data packet information sent to or received from the access point device. The processor is adapted to provide location based service information to one or more client devices associated with the access point device upon estimation of the location.

[0023]   In one alternative, the data packet information for a given data packet includes a data rate of the given data packet. Here, the information stored in the memory includes distance estimates associated with different data rates. The processor determines the location estimate of the access point device by comparing the data rate of the given data packet to the different data rates and distance estimates stored in the memory.

[0024]   In another alternative, the processor is operable to estimate the location of the access point device using the data packet information for multiple data packets sent to or received from the access point device. The processor is further operable to rank the data packet information for each of the multiple data packets to obtain approximate distances based upon each such packet. In one example, the processor estimates the location using a centroid of the approximate distances. In another example, the processor is further operable to assign a confidence in the estimated location of the access point device. The confidence may represent a likeli-

hood that the access point device is within a given area. Optionally, the confidence is based upon at least one of spatial diversity of selected devices associated with the access point device, receiver characteristics of the selected devices, transmitter characteristics of the selected devices, and freshness of information stored in memory or the data packet information sent to or received from the access point device.

[0025]   In yet another alternative, the processor comprises a plurality of processing devices in a distributed architecture and the memory stores the information so that the information is accessible to one or more of the plurality of processing devices.

[0026]   Each of the aforementioned methods and processes may be performed by a processor such as a CPU, microprocessor, ASIC or other computing device. Furthermore, such methods and processes may be stored on a computer-readable recording medium (e.g., CD-ROM, DVD, Blue Ray disc, flash memory or the like) for execution by a processor.

BRIEF DESCRIPTION OF THE DRAWINGS

[0027]   FIG. 1 illustrates an exemplary wireless network in accordance with aspects of the present invention.

[0028]   FIG. 2 illustrates aspects of a wireless network in accordance with aspects of the present invention.

[0029]   FIG. 3 illustrates an exemplary configuration for estimating device location in accordance with aspects of the present invention.

[0030]   FIG. 4 illustrates an exemplary confidence and positioning diagram in accordance with aspects of the present invention.

[0031]   FIG. 5 illustrates an exemplary dynamic scenario for location estimation.

[0032]   FIGS. 6A-B illustrate exemplary wireless devices for use with aspects of the present invention.

DETAILED DESCRIPTION

[0033]   The instant application is related to United States Provisional Patent Application No. 60/990,569, entitled "Locating Electronic Devices Using Passive Radios," attorney docket number 16113-0938P01, filed Nov. 27, 2007, United States Provisional Patent Application No. 60/990,259, entitled "Estimating Location Using Cell ID and Application Specific Data," attorney docket number 2525.1140000, filed Nov. 26, 2007, United States Provisional Patent Application No. 60/990,238, entitled "Disambiguation of Wireless Data Clusters Using Preclassification," attorney docket number 2525.116000, filed Nov. 26, 2007, United States Provisional Patent Application No. 60/990,247, entitled "Method and System for Cell-Id Remapping Detection and Adaptation," attorney docket number 2525.1170000, filed Nov. 26, 2007, and United States Provisional Patent Application No. 60/990,597, entitled "Wireless Base Station Location Estimation," attorney docket number 2525.1150000, filed Nov. 27, 2007, the entire disclosures of which are hereby incorporated by reference herein.

[0034]   The instant application is also related to U.S. patent application Ser. No. _____, entitled "Determining Location Information Using Passive Radios," attorney docket number 16113-0938001, filed concurrently herewith, U.S. patent application Ser. No. _____, entitled "Systems and Methods for Estimating Location Using Cell ID and Application Specific Data," attorney docket number 2525.1140001, filed concurrently herewith, U.S. patent application Ser. No. _____,

entitled "Disambiguation of Wireless Data Clusters Using Preclassification," attorney docket number 2525.116001, filed concurrently herewith, U.S. patent application Ser. No. _____, entitled "Method and System for Cell-Id Change Detection and Updating," attorney docket number 2525.1170001, filed concurrently herewith, U.S. patent application Ser. No. _____, entitled "Wireless Base Station Location Estimation," attorney docket number 2525.1150001, filed concurrently herewith, and U.S. patent application Ser. No. _____, entitled "Accuracy Analysis of Wireless Base Station Location," attorney docket number 2525.1180001, filed concurrently herewith, the entire disclosures of which are hereby incorporated by reference herein.

[0035]    The aspects, features and advantages of the present invention will be appreciated when considered with reference to the following description of preferred embodiments and accompanying figures. The same reference numbers in different drawings may identify the same or similar elements. Furthermore, the following description does not limit the present invention; rather, the scope of the invention is defined by the appended claims and equivalents.

[0036]    FIG. 1 provides an exemplary WLAN 100 which may have a number of APs 102 (e.g., 102A, 102B and 102C) as well as one or more client devices 104 (e.g., 104A, 104B and 104C) as shown. The APs 102 may include devices of different types from various manufacturers and may have different capabilities. Some APs 102 may be wireless routers that can support dozens of client devices or more, while some APs may act as signal repeaters. The client devices 104 may also be of different types and have different capabilities. For instance, as shown client device 104A may be a PDA, 104B may be a laptop/notebook computer, and 104C may be a mobile phone.

[0037]    The WLAN 100 may also include a server 110 that is in wired or wireless communication with some or all of the APs 102. A database 112 may be associated with the server 110. The database 112 may be used to store data related to the APs 102 and/or the client devices 104. For instance, the database 112 may maintain location-related records for the APs 102.

[0038]    Each AP 102, each client device 104 and the server 110 may contain at least one processor, memory and other components typically present in a computer. FIG. 2 illustrates an alternative view 200 of a single AP 102, a single client device 104 and server 110 identifying such components. As shown, the AP 102 includes a processor 202 and memory 204. Components such as a transceiver, power supply and the like are not shown in any of the devices of FIG. 2.

[0039]    Memory 204 stores information accessible by the processor 202, including instructions 206 that may be executed by the processor 202 and data 208 that may be retrieved, manipulated or stored by the processor. The memory may be of any type capable of storing information accessible by the processor, such as a hard-drive, ROM, RAM, CD-ROM, flash memories, write-capable or read-only memories. The processor 202 may comprise any number of well known processors, such as processors from Intel Corporation. Alternatively, the processor may be a dedicated controller for executing operations, such as an ASIC.

[0040]    The instructions 206 may comprise any set of instructions to be executed directly (such as machine code) or indirectly (such as scripts) by the processor. In that regard, the terms "instructions," "steps" and "programs" may be used interchangeably herein. The instructions may be stored in any

computer language or format, such as in object code or modules of source code. The functions, methods and routines of instructions in accordance with the present invention are explained in more detail below.

[0041]    Data 208 may be retrieved, stored or modified by processor 202 in accordance with the instructions 206. The data may be stored as a collection of data. For instance, although the invention is not limited by any particular data structure, the data may be stored in computer registers, in a relational database as a table having a plurality of different fields and records.

[0042]    The data may also be formatted in any computer readable format such as, but not limited to, binary values, ASCII or EBCDIC (Extended Binary-Coded Decimal Interchange Code). Moreover, the data may include any information sufficient to identify the relevant information, such as descriptive text, proprietary codes, pointers, references to data stored in other memories (including other network locations) or information which is used by a function to calculate the relevant data.

[0043]    Although the processor 202 and memory 204 are functionally illustrated in FIG. 2 as being within the same block, it will be understood that the processor and memory may actually comprise multiple processors and memories that may or may not be stored within the same physical housing or location. For example, some or all of the instructions and data may be stored on a removable CD-ROM and others within a read-only computer chip. Some or all of the instructions and data may be stored in a location physically remote from, yet still accessible by, the processor 202. Similarly, the processor 202 may actually comprise a collection of processors which may or may not operate in parallel. Data may be distributed and stored across multiple memories 204 such as hard drives or the like.

[0044]    In one aspect, AP 102 communicates with one or more client devices 104 and the server 110 via wireless network 210 (e.g., a Wi-Fi®-type network such as an 802.11 g network or a Bluetooth®-type network). Each client device 104 and the server 110 may be configured similarly to the AP 102 with a processor 202, memory 204 and instructions 206, as well as one or more user input devices 212 and a user output device, such as display 214. Each client device 104 and the server 110 may be a general purpose computer, intended for use by a person, having all the components normally found in a personal computer such as a central processing unit ("CPU"), display, CD-ROM or DVD drive, hard-drive, mouse, keyboard, touch-sensitive screen, speakers, microphone, wireless modem and all of the components used for connecting these elements to one another.

[0045]    Each device on the network 100 may transmit and receive data (packets) according to a known protocol in a segment (channel) of allotted portion the spectrum (frequency band). For instance, the IEEE 802.11 series of protocols specifies the format of various types of packets which may be transmitted in preset channels of the spectrum, such as the ISM band located in the 2.4 GHz frequency range or the public safety band located in the 4.9 GHz frequency range.

[0046]    Depending upon their configuration, each AP may have a coverage area 106 such as coverage areas 106A, 106B and 106C as shown in FIG. 1. In many instances the coverage areas 106 of adjacent APs 102 may overlap, such as shown by overlap region 108. It should be understood that the coverage

US 2010/0020776 A1

Jan. 28, 2010

areas **106** in real-world implementations may be affected due to transmit power requirements, signal attenuation, multipath and other factors.

[0047] As discussed above, it is desirable to provide location-based services to client devices. While some client devices may include a GPS receiver or some other tool to determine and/or communicate the device's location, many client devices may not have such equipment or capabilities. Thus, in accordance with one aspect of the present invention, the location of a given client device may be determined based upon the location(s) of one or more APs, either alone or in conjunction with other network-related information.

[0048] In such a scenario, one important issue is that in many instances the specific location of an AP **102** may not be known. Therefore, in accordance with another aspect of the present invention, systems and methods are provided to estimate an AP's location using data rate information between the AP and one or more client devices. FIG. **3** illustrates an exemplary configuration **300** with a single AP **302** having a coverage area **304**. A first client device **306** and a second client device **308** are located within the coverage area **304**.

[0049] In the present example, the client device **306** may be "associated" with the AP **302**, transmitting packets to and receiving packets from the AP **302**. Here, the client device **306** is not GPS enabled and is not otherwise configured to determine its location. In contrast, the client device **308** may include a GPS receiver or other means of performing geolocation.

[0050] In this example, the client device **306** is located a first distance **310** from the AP **302**, while the client device **308** is located a second distance **312** from the AP. And the client device **306** is located a third distance **316** from the client device **308**. The client device **308** performs geolocation using its GPS receiver or by other means to accurately determine its location.

[0051] Furthermore, the client device **308** may be configured to observe or capture data packets such as frame **314** transmitted to or from the AP **302**. By way of example, the client device **308** may be a laptop having a wireless transceiver that can operate in a "sniffer" or "monitor" mode, thereby handling transmitted frames **314** without requiring the client device **308** to be associated with the AP **302**.

[0052] In accordance with one embodiment, the client device **308** receives and captures the frame(s) **314**. The client device **308** may analyze the frame **314**, such as with an analyzer program executed by its processor. Alternatively, the server **110** may execute the analyzer program. The analyzer program may parse different portions of the frame **314** and perform error checking on the frame **314**. As part of the analysis, it is determined which device (e.g., AP **302** or client device **306**) transmitted the frame **314**, as well as the data rate at which the transmitter sent the frame **314**. The data rate may be identified by data in the frame **314** itself or may be otherwise identifiable. For example, the data rate is the rate of transmission from the AP **302** to the client device **306** or from the client device **306** to the AP **302**. Alternatively, if the client device **308** is associated with the AP **302** and is communicating with the AP **302** (as opposed to merely sniffing packets), then the data rate may be the rate transmitted from the AP **302** to the client device **308** or from the client device **308** to the AP **302**.

[0053] Using this information, the client device **308** or the server **110** may estimate the distance of the client device **308** relative to the AP **302** and/or the client device **306**. For instance, the data rate may be used as an estimate of channel quality to indicate the physical separation between client device **308** and the AP **302** or between the client device **308** and the client device **306**. In one example, a look-up table may be used to estimate the distance. An exemplary look-up table is provided below.

| Rate | Distance |
|---|---|
| 5 Mbps | 250 meters |
| 10 Mbps | 125 meters |
| 54 Mbps | 30 meters |

[0054] As shown in this example, the higher the data rate, the shorter the distance. However, the distance may be adjusted by various parameters as will be discussed below. The distances in the look-up table may be approximated using a worst-case estimate based on various channel parameters such as propagation characteristics, transmit power, antenna gain, receiver sensitivity and other radio characteristics for both the transmitter and receiver, as well as terrain type, etc.

[0055] In accordance with another aspect, so long as the client device **308** is able to capture and properly decode a packet containing a transmitted frame, then it is determined that the distance between the client device **308** and the transmitting entity (e.g., AP **302** or client device **306**) must fall within the worst-case estimate. If the client device **308** is not associated with the AP **302**, then some platforms may not provide or process certain frames. In the case where client device **308** is associated with the AP **302**, then more information about the AP **302** may be available which can be used to improve the accuracy of the AP's location. For instance, in addition to the frames that client device **308** observes between the AP **302** and the client device **306**, client device **308** also has frames transmitted to itself by the AP **302**. These frames also have data rate information associated with them, so this is another opportunity to obtain an estimate of the distance between the AP **302** and the client device **308**.

[0056] Thus, in one alternative the frame(s) observed between AP **302** and client device **306** provide a first estimate or multiple estimates which can be used to determine a first approximate distance **312**, while the frame(s) received by the client device **308** from AP **302** provide a first estimate or multiple estimates which can be used to determine a second approximate distance **312**. In this case, weights or rankings may be applied to the first and second approximate distances to arrive at a resultant distance **312**. Of course, it should be understood that there may be other client devices within the area **304** in communication with the AP **302**. In that situation, there may be even more approximate distances **312** calculated/weighted to arrive at an even more accurate resultant distance **312**.

[0057] If the packet cannot be decoded or is decoded with uncorrectable errors, then the distance approximation may not be performed. Alternatively, if the packet cannot be decoded properly, it may be inferred that the distance **312** between AP **302** and client device **308** is greater than the distance **310** between the AP **302** and the client device **306**.

[0058] The above look-up table may be supplemented or otherwise parameterized based upon additional factors besides distance. For instance, the table can be parameterized based upon the transmit power values of the transmitter. Or if the transmit power values are unknown, a certain distribution

US 2010/0020776 A1

5

of common transmit power values can be used as an approximation. The table can also be parameterized based upon the environment where the packet/frame was captured. For example, in a dense urban environment, one may expect a high multipath coefficient. On the other hand, in a rural environment, one may expect the propagation pattern to be very symmetric, leading to larger distances for the same data rate. The table could also be parameterized based upon the receiver's radio characteristics, such as the sensitivity, antenna gain and any diversity metrics (e.g., multiple antennas) which may be applicable.

[0059]   Calibration or otherwise updating of the look-up table may be done based on the power, radio sensitivity and/or vendor information of the various devices. For instance, different radios may have very different RF characteristics. Some APs are operable to transmit at higher power than others. Thus, at the same data rate, a higher power AP may be located farther away than a lower power AP.

[0060]   Similarly, it may be beneficial to evaluate the sensitivity of the receiver of the client device **308**. By way of example, a dedicated sniffer/scanner may have a much higher gain antenna/receive chain than the radio receiver on a laptop, which in turn may have a higher gain than the radio on a cellular phone.

[0061]   Vendor and model information for a given device and its radio/receiver may be determined based upon the device's MAC address (e.g., using the object identifier ("OID")) and frames transmitted by the device. This in turn may be used to evaluate the power and sensitivity of the radio/receiver.

[0062]   Once the packet containing a frame is properly decoded, the frame may be examined to determine whether it was sent by the AP **302** or the client device **306** (or some other entity). This information may provide additional insight into the specifications of the particular AP **302** or client device **306**. For instance, if the frame information identifies the AP **302** as being of a specific type, then that may indicate the power level(s) at which the AP **302** operates.

[0063]   If the decoded frame was sent by the AP **302**, then the distance determined using the look-up table gives an accurate upper bound on the separation between the client device **308** and the AP **302**. This is coupled with the location of the client device **308** provided by its self-geolocation. Thus, starting with the client device **308** at a center point of a circle similar to the coverage area **304**, the AP **302** can be determined to be within a radius of the circle, where the radius is the distance identified by the look-up table.

[0064]   If the decoded frame was sent by the client device **306**, then the distance determined using the look-up table identifies the maximum separation between the client device **306** and the client device **308**. Similarly, the distance determined using the data rate (and possibly other information) in the look-up table also provides the maximum separation between the client device **306** and the AP **302**. Using the geometrical principal known as the Triangle Inequality, the maximum separation between the AP **302** and the client device **308** is no more than twice the distance determined using the look-up table.

[0065]   As discussed above, because the client device **308** has a GPS receiver or can otherwise determine its position using geolocation, the location of client device **308** is known. Thus, in accordance with another aspect of the invention, the location of the AP **302** is determined by triangulating using

the distance between the client devices **306** and **308** and the distance between the AP **302** and the client device **308**.

[0066]   This process may be repeated by analyzing multiple packets sent between the AP **302** and the client device **306** (or other client devices falling within the coverage area **304**. Multiple estimates of the location of the AP **302** may be made by the client device **308** and/or other client devices having geolocation capabilities.

[0067]   Alternatively, an estimate of the location of the AP **302** may be performed using a centroid (mean location) of multiple points associated with the AP **302**. These points may correspond to locations obtained by the same or different client devices **308** using the AP **302** at the same or different times. A coverage radius of the AP **302** may also be estimated so that most or all the points in a collection are covered.

[0068]   Once a given packet/frame has been captured and decoded by the client device **308**, then the location estimation process for the AP **302** may be done by the client device **308**, the AP **302** or other entity such as server **110** of FIG. **1**. By way of example only, the look-up table may be stored in database **112**. This database may be accessible only to the server **110**, to some or all of the APs **102**, and/or to some or all of the client devices **104**. Alternatively, the database **112** may be a distributed database spread among various nodes of the wireless network, including some of the APs **102** and/or the server **110**.

[0069]   Returning to FIG. **3**, once the location of the AP **302** has been estimated, then that information may be used to provide location-based services to the client device **306**. For instance, this may be done relying solely on the location of the AP **302**, and that location estimate is used when offering location-enabled features to the user of the client device **306**. Alternatively, the location of the client device **306** itself may be determined using the processes discussed above with regard to the AP **302**. Here, for example, once the AP **302** location has been estimated, the Triangle Inequality or other geolocation technique (e.g., time difference of arrival ("TDOA"), angle of arrival ("AOA"), etc.) may be used to estimate the location of the client device **306**. As above, repeated measurements may be used to determine the location before or during offering location-enabled services to the user of the client device **306**.

[0070]   In accordance with other aspects of the present invention, the confidence of the location of an AP may be estimated. The confidence determination may include an evaluation as to whether the transmitting entity is in fact an AP. And the confidence determination may evaluation the relative accuracy of the physical location for that transmitting entity.

[0071]   In one evaluation, it is important to determine whether the device of interest is really an AP. This may be done by evaluating different types of frames sent to (or received from) the device of interest. Depending upon the protocol of the WLAN, there may be management frames, control frames, data frames, etc. which are sent and received by devices in the network. In the example of FIG. **3**, if the client device **308** decodes a management frame such as a beacon frame, then it is determined that the transmitting entity is the AP **302**. However, if the decoded frame is a control frame such as a "Request To Send" ("RTS"), "Clear to Send" ("CTS"), "Acknowledgement" ("ACK"), "Power Save-Poll" ("PS-POLL"), or "Contention Free-End" ("CF-END"), then the transmitter may or may not be the AP **302**.

6

[0072]    Another indicator of whether the device of interest is the AP **302** is the number of frames it transmits. For example, a high number of frames such as control frames sent over a short period of time (e.g., **100** control frames sent in 2 minutes) may suggest that the device is an AP. Similarly, a high number of frames received may also suggest that the device is an AP.

[0073]    Data and metrics concerning the device of interest may be obtained by various client devices **308** at the same or different periods of time. Such information may be stored in a database such as database **112**. These various indicators are analyzed to produce some value of confidence that the device is an AP. By way of example only, the confidence may be expressed as a percentage value (e.g., 90%) that the device of interest is an AP. An exemplary algorithm may rely on a number of factors to obtain confidence levels/values. For instance, spatial, temporal and/or platform diversity of GPS measurements would be relevant. Also, the types of frames that are used in the measurement, such as data frames, management frames and/or control frames may affect the confidence. And the source of the measurement may be a relevant factor, such as if it is a trusted party providing the readings versus uploading them through an Open API implementation.

[0074]    In another evaluation, the confidence in the location of the AP **302** is determined. Here, the confidence may be expressed as a percentage, e.g., that it is 90% likely that the device of interest is within a certain radius/area). Factors affecting this analysis include spatial diversity of the different client devices which interact with the AP. In addition, whether the client devices are of different types may be relevant to the evaluation. For instance, the antenna gain and overall robustness of the receiver may impact the accuracy of the measurements taken. Here, the data taken by a high quality receiver with multiple spatially diverse antennas having high gain may be given a higher weight in the analysis than data taken from a receiver with a single, low gain antenna.

[0075]    Furthermore, the accuracy of the GPS or other geolocation measurements may affect the accuracy calculation. Here, for instance, a differential GPS receiver may be determine the client device **308**'s position to within a meter or less, while a non-differential GPS receiver may determine the position to within 5-25 meters or more. In addition, while the accuracy of a GPS measurement outdoors with a clear view of the sky may be close to optimum, performance degradations may occur in urban canyon environments where fewer satellites are "visible" and especially when the GPS receiver is located indoors. In the latter case, the GPS receiver may be unable to fix a location at all. Also the "freshness" of the data collected may be relevant to the confidence determination. Here, more recent data may be given a higher weight in the analysis than older data. As above, an exemplary algorithm may rely on a number of additional factors to obtain accuracy. For instance, spatial, temporal and/or platform diversity of GPS measurements would be relevant. Also, the types of frames that are used in the measurement, such as data frames, management frames and/or control frames may affect the confidence. And the source of the measurement may be a relevant factor, such as if it is a trusted party providing the readings versus uploading them through an Open API implementation.

[0076]    In accordance with another aspect of the present invention, processes to determine the accuracy of AP locations are provided. In one embodiment, the measurements taken by various client devices determine a confidence that a given AP is within a certain area. One or more data points represented the expected position of the given AP may be calculated based upon the various factors discussed herein. A "confidence code" may be applied to each data point.

[0077]    The confidence code may be calculated using a weighted function. The weights used by the weighted function may be obtained based on information of the collected data such as size of the collection (e.g., the cardinality or number of points in the collection), platform information of the client devices, temporal and/or spatial diversity of the points corresponding to the client devices, etc. One or more estimates of the location of the AP may be adjusted based on the calculated confidence code. A Monte Carlo-type analysis may also be performed.

[0078]    In order to provide more accurate estimation of AP locations and coverage regions, several factors can be taken into account to analyze the accuracy of such estimations. The factors may include the number of points, platform information of corresponding client devices, temporal diversity of the points, spatial diversity of the points, etc. For example, the estimated location for a given AP will be more accurate when using more points for the estimation.

[0079]    More variety of platforms of client devices indicates more users for the AP, and may increase the accuracy of the estimation. With regard to temporal diversity, points spanning multiple distinct times may contribute to a more accurate estimation than points spanning fewer distinct times. Also, with regard to spatial diversity, more accurate estimation can be achieved by using points spread in a larger space than points clustered in a smaller area. A weight function can be used to calculate a confidence code based on the above information. Accordingly, the estimated location and coverage radius for the given AP can be adjusted based on the confidence code.

[0080]    In one example, the confidence code represents the likelihood that a particular data point is valid or an outlier. For instance, this may be expressed as a percentage (e.g., 90% likely that the data point is valid), as a ranking (e.g., a 4 on a scale of 1-5, with 1 being the lowest confidence and 5 being the highest confidence), or some other relative indicator. The confidence code may then be used to discard outliers. Once this is done, the system may compute a "best circle" representing the likely position of the AP of interest.

[0081]    In an alternative, multiple circles may be provided as shown in the confidence and positioning diagram **400** of FIG. **4**. In this example, AP **402** may be placed in the center of multiple concentric circles **404**, **406**, **408** and **410**. Each circle may be associated with both an area and a confidence value. For instance, the innermost circle **404** may indicate that there is a 50% likelihood that the AP **402** is within **10** meters of the epicenter of that circle. The next smallest circle **406** may be used to indicate that there is a 67% likelihood of the AP **402** being within 25 meters of the epicenter of that circle. The next circle **408** may be used to indicate that there is a 75% likelihood of the AP **402** being within 50 meters of the epicenter of that circle. And the outermost circle **410** may be used to indicate that there is a 90% chance of the AP **402** being within 125 meters of the epicenter of that circle. In one example, an $O(n^2)$ algorithm may be used to detect outliers. This may be done as follows. First, the centroid of a given number of points may be computed. Then for each point, its distance to the centroid may be computed. If the distance for a given point exceeds a threshold, then the point may be marked or otherwise identified as an outlier. The process may be refined

7

by removing some/all outliers and repeating the above. This may be repeated until there are no more outliers or the algorithm converges.

[0082] As discussed herein, the location of a given AP may be based on a number of measurements taken by one or more client devices. The raw data collected by a client device may be processed locally or sent to a central repository (e.g., server 110 of FIG. 1) for processing. Regardless of which device performs the calculations, each distance and/or each location estimate may be stored in a database, for instance as part of a location table. The location table may store, for one or more APs, a unique identifier for the AP (such as a MAC address, IP address or SSID), a location estimate (e.g., latitude and longitude coordinates and/or height), a time the location estimate was obtained/calculated, a coverage radius for the AP, a confidence for the location estimate (e.g., 90% likely to be within 50 meters of the specific position), equipment type (e.g., transceiver make/model) and/or RSSI information. If multiple location measurements are made, some or all of them may be stored in the location table. Calculated locations and associated estimates such as discussed above with regard to FIG. 4 may also be stored in the location table.

[0083] The server 110 may provide AP location information from the location table to users upon request. In addition, when a location is needed for a given client device, the server 110 may obtain relevant data for one or more APs from the location table and either provide them to the client device or perform location calculations for the client device's position.

[0084] By way of example, a client device without geolocation capabilities may perform a scanning or sniffing operation to obtain a list of all APs that can be observed by the client device. This list may then be evaluated against a database of APs such as the aforementioned location table to determine the specific or estimated locations of the observed APs. Given the (likely) AP locations, a location of the client device may be estimated as set forth above.

[0085] In accordance with other aspects of the present invention, the client devices may be stationary or may be moving. In either situation, the data rate between a given client device and a serving AP may change. This may be due to a number of factors such as multipath interference, error rates, etc. For example, a client device may use a maximum data rate (e.g., 54 Mbps) at first to communicate with an AP. If there is no ACK control frame received from the AP, then the client device may drop or back off its data rate to 24 Mpbs or less until it receives the ACK. Thus, in one example, changes in the data rate between a given client device and the AP may be used to refine the distance estimate. As different measurements may occur at different data rates, there may be multiple distance estimates and/or location estimates for a given AP. Statistical processing may be used to arrive at an average distance or most likely location estimate for a given confidence level. In the case where the client device includes a GPS receiver, if that device captures multiple frames relating to an AP, then it may also obtain multiple GPS measurements and use the data rate as a bounding factor. Such measurements of GPS signals and/or frames may be aggregated in a localization process to obtain a more accurate estimate for the AP's location.

[0086] It is also possible to use the frame size and checksum of the frame/packet to estimate distance and accuracy. For instance, the larger the frame size, the more likely it is that the frame may become corrupted during transmission. Thus, if the client device received/sniffs a large frame (e.g., 500 bytes)

from an AP, then it is likely that the AP is closer than an average distance for the data rate that packet/frame is being transmitted at. Conversely, if the frame is very small (e.g., 10 bytes or less), then the distance may be farther than the average distance. The average distance may be computed or otherwise determined as part of the development of the look-up table. For instance, a mean value or median value calculation may be performed on multiple data points to arrive at the average distance. Furthermore, the look-up table may be constructed using an analytical model for bit error rate and use that information to determine how far away a device could be so that a packet could be received at a certain data rate. Or, in addition or alternatively, the look-up table could be constructed using experimental data.

[0087] In a further alternative, the WLAN of interest may permit multiple APs to share a single frequency channel, such as in a spread-spectrum based architecture. However, depending on the implementation, the various APs and/or client devices using a particular frequency channel may need to adjust their data rates and/or power levels in order to share the channel while maintaining an acceptable noise or error rate. In this scenario, if there are multiple APs using the same channel and the data rate is relatively low (e.g., at 1 Mbps instead of 54 Mbps), then the distance estimation for a given transmitter may be increased. The amount of increase may be related to the number of APs in the same channel. By way of example only, the distance estimation may be increased by a certain percentage such as on the order of 5-20%.

[0088] FIG. 5 illustrates an alternative scenario 500 wherein there is a single AP 502 and a first client device 504 associated with the AP 502 at a first distance 506 from the AP 502. The first client device 504 is stationary. In contrast, a second client device 508 moves from a first location at time $T_1$ to a second location at time $T_2$. At time $T_1$ the distance between the client device 508 and the AP 502 is shown by line 510, while at time $T_2$ the distance between the client device 508 and the AP 502 is shown by line 512.

[0089] In accordance with another aspect of the present invention, the system may compare the received signal strength indication ("RSSI") and data rate at time $T_1$ with the RSSI and data rate at time $T_2$. The packet decoding success rates at times $T_1$ and $T_2$ may be compared and evaluated with the RSSI and data rates to further improve the distance estimation. While only two time points are shown, any number of points may be employed. Thus, the client device 508 may be placed in a vehicle and data may be obtained continuously or at predetermined time increments. Furthermore, the rate of speed of the client device 508 may be factored into the analysis as well.

[0090] In a further example, the client device scanning or sniffing transmitted frames may include a receiver with multiple antennas and/or multiple receive chains. Such architectures may be used to provide spatial and/or temporal diversity and give a "stereo" effect which can improve the accuracy of the triangulation calculations. For instance, in one embodiment two separate receivers are located on either side of a vehicle. Both receivers may be electrically connected a single processing device (e.g., a laptop), and both may scan for data packets simultaneously. As with the moving example discussed with respect to FIG. 5, the difference in RSSI and packet decoding success rate for each receiver may improve the distance estimation. Of course, more than two receivers and/or antennas may be employed.

US 2010/0020776 A1

8

[0091]  FIGS. **6**A and **6**B illustrate general architectures of wireless devices for use in accordance with the present invention. Specifically, FIG. **6**A provides an exemplary GPS-enabled device **600** while FIG. **6**B provides an exemplary device **602** which is not GPS enabled. As shown in FIGS. **6**A and **6**B, each device **600** and **602** may include a transceiver **604** which is operable to send and receive data packets over a Wi-Fi® or other type of WLAN using an antenna **606**. Although a single antenna **606** is shown, multiple antennas (and/or multiple receive chains) may be used for diversity purposes as explained herein.

[0092]  Each device may also include a microprocessor or controller **608** and memory **610** for storing instructions and/or data. A user interface **612** may be provided along with one or more applications **614**. The applications **614** may be stored in an application memory (not shown) or may be stored in memory **610**. The key differences as shown between the devices **600** and **602** are the GPS receiver **616** and associated antenna **618** of the device **600**. The GPS receiver **616** may be implemented in hardware, software or some combination. The GPS receiver **616** is used to identify a location of the device **600**. Referring back to the earlier example of FIG. **3**, the client device **308** may be a GPS-enable device such as device **600**, while the client device **306** and/or the AP **302** may be configured without a GPS receiver such as device **602**.

[0093]  Although the invention herein has been described with reference to particular embodiments, it is to be understood that these embodiments are merely illustrative of the principles and applications of the present invention. It is therefore to be understood that numerous modifications may be made to the illustrative embodiments and that other arrangements may be devised without departing from the spirit and scope of the present invention as defined by the appended claims. Furthermore, while particular processes are shown in a specific order in the appended drawings, such processes are not limited to any particular order unless such order is expressly set forth herein.

1. A computer-implemented method of estimating the location of a wireless device, the method comprising:

obtaining a packet of data transmitted from a first wireless device to a second wireless device;

determining whether one of the first and second wireless devices is a wireless access point;

determining the data rate of the transmitted data packet;

if one of the first and second wireless devices is the wireless access point, then evaluating the determined data rate against a predetermined criterion; and

assigning an estimated location to the wireless access point based upon the evaluation.

2. The method of claim **1**, wherein the predetermined criterion is stored in a look-up table and the evaluation includes identifying a distance in the look-up table associated with the determined data rate.

3. The method of claim **1**, wherein:

the transmitted data packet is obtained by a client device; and

the method further includes identifying a distance associated with the data rate, wherein the distance is used as a separation between the first wireless device and the client device.

4. The method of claim **3**, wherein the client device is at a known location and the method further comprises:

assigning a distance between the wireless access point and the client device to be the same as the distance between the first wireless device and the client device; and

triangulating a position of the wireless access device using the known location of the client device, the distance between the first wireless device and the client device and the distance between the wireless access point and the client device to obtain the estimated location.

5. The method of claim **4**, wherein the client device uses a GPS receiver to obtain the known location.

6. The method of claim **1**, wherein the predetermined criterion includes a worst-case distance estimate based upon at least one parameter.

7. The method of claim **6**, wherein the at least one parameter includes one or more of a channel propagation characteristic, a transmitter characteristic and a receiver characteristic.

8. The method of claim **1**, further comprising revising the estimated location of the wireless access point based upon multiple data packets sent or received by the wireless access point.

9. The method of claim **1**, further comprising:

determining a position of the client device based upon the estimated location of the wireless access point; and

providing a location-based service to the client device based on the determined position.

10. A computer-implemented method of estimating confidence in a status of a wireless device, the method comprising:

obtaining one or more packets of data transmitted from a first wireless device to a second wireless device;

evaluating the one or more transmitted data packets to identify a frame type for each respective data packet;

identifying the first wireless device or the second wireless device as a wireless access point based upon the identified frame type for at least one of the data packets; and

assigning a confidence value to the identification of the wireless access point.

11. The method of claim **10**, wherein:

if the frame type of at least one of the respective data packets is a management frame, then identifying the first wireless device as a wireless access point; and

setting the confidence value for the identification of the wireless access point to a maximum confidence value.

12. The method of claim **11**, wherein:

if the frame type of at least one of the respective data packets is not the management frame, then evaluating whether the frame type of any of the respective data packets is a control frame;

if the frame type of at least one of the respective data packets is the control frame, then identifying the first wireless device as the wireless access point; and

setting the confidence value for the identification of the wireless access point to a value between the maximum confidence value and a minimum confidence value.

13. The method of claim **10**, wherein identifying the first wireless device or the second wireless device as the wireless access point further includes analyzing a number of frames transmitted or received by each device.

14. A computer-implemented method of estimating confidence in a location of a wireless device, the method comprising:

obtaining one or more packets of data transmitted from a first wireless device to a second wireless device;

9

determining that the first or second wireless device is a wireless access point based upon the transmitted packets;

determining an estimated location of the wireless access point; and

assigning a confidence value to the estimated location.

**15**. The method of claim **14**, wherein the confidence value represents a percentage likelihood that the wireless access point is contained within a specified area of interest.

**16**. The method of claim **14**, wherein the estimated location is based on multiple data points.

**17**. The method of claim **16**, wherein a confidence code is applied to each data point.

**18**. The method of claim **17**, wherein the confidence code for each data point is calculated using a weighted function.

**19**. The method of claim **17**, wherein the confidence code for each data point represents a likelihood that that data point is valid or an outlier.

**20**. An apparatus including a processor operable to estimate the location of a wireless device, the processor executing a process to:

obtain a packet of data transmitted from a first wireless device to a second wireless device;

determine whether one of the first and second wireless devices is a wireless access point;

determine the data rate of the transmitted data packet;

if one of the first and second wireless devices is the wireless access point, then evaluate the determined data rate against a predetermined criterion; and

assign an estimated location to the wireless access point based upon the evaluation.

**21**. A computer-readable recording medium recorded with a computer program for use by a processor to perform a process of estimating the location of a wireless device, the process comprising:

obtaining a packet of data transmitted from a first wireless device to a second wireless device;

determining whether one of the first and second wireless devices is a wireless access point;

determining the data rate of the transmitted data packet;

if one of the first and second wireless devices is the wireless access point, then evaluating the determined data rate against a predetermined criterion; and

assigning an estimated location to the wireless access point based upon the evaluation.

**22**. An apparatus including a processor operable to estimate confidence in a status of a wireless device, the processor executing a process to:

obtain one or more packets of data transmitted from a first wireless device to a second wireless device;

evaluate the one or more transmitted data packets to identify a frame type for each respective data packet;

identify the first wireless device or the second wireless device as a wireless access point based upon the identified frame type for at least one of the data packets; and

assign a confidence value to the identification of the wireless access point.

**23**. A computer-readable recording medium recorded with a computer program for use by a processor to perform a process of estimating confidence in a status of a wireless device, the process comprising:

obtaining one or more packets of data transmitted from a first wireless device to a second wireless device;

evaluating the one or more transmitted data packets to identify a frame type for each respective data packet;

identifying the first wireless device or the second wireless device as a wireless access point based upon the identified frame type for at least one of the data packets; and

assigning a confidence value to the identification of the wireless access point.

**24**. An apparatus including a processor operable to estimate confidence in a location of a wireless device, the processor executing a process to:

obtain one or more packets of data transmitted from a first wireless device to a second wireless device;

determine that the first or second wireless device is a wireless access point based upon the transmitted packets;

determine an estimated location of the wireless access point; and

assign a confidence value to the estimated location.

**25**. A computer-readable recording medium recorded with a computer program for use by a processor to perform a process of estimating confidence in a location of a wireless device, the process comprising:

obtaining one or more packets of data transmitted from a first wireless device to a second wireless device;

determining that the first or second wireless device is a wireless access point based upon the transmitted packets;

determining an estimated location of the wireless access point; and

assigning a confidence value to the estimated location.

**26**. An apparatus for use in a wireless network, the apparatus comprising:

memory for storing information associated with a plurality of devices in the wireless network;

means for communicating with one or more of the plurality of devices in the wireless network; and

a processor operable to estimate a location of an access point device in the wireless network based upon data packet information sent to or received from the access point device;

wherein the processor is adapted to provide location based service information to one or more client devices associated with the access point device upon estimation of the location.

**27**. The apparatus of claim **26**, wherein the data packet information for a given data packet includes a data rate of the given data packet, the information stored in the memory includes distance estimates associated with different data rates, and the processor determines the location estimate of the access point device by comparing the data rate of the given data packet to the different data rates and distance estimates stored in the memory.

**28**. The apparatus of claim **26**, wherein the processor is operable to estimate the location of the access point device using the data packet information for multiple data packets sent to or received from the access point device, and wherein the processor is further operable to rank the data packet information for each of the multiple data packets to obtain approximate distances based upon each such packet.

**29**. The apparatus of claim **28**, wherein the processor estimates the location using a centroid of the approximate distances.

US 2010/0020776 A1

Jan. 28, 2010

10

**30**. The apparatus of claim **28**, wherein the processor is further operable to assign a confidence in the estimated location of the access point device.

**31**. The apparatus of claim **30**, wherein the confidence represents a likelihood that the access point device is within a given area.

**32**. The apparatus of claim **30**, wherein the confidence is based upon at least one of spatial diversity of selected devices associated with the access point device, receiver characteristics of the selected devices, transmitter characteristics of the selected devices, and freshness of information stored in memory or the data packet information sent to or received from the access point device.

**33**. The apparatus of claim **26**, wherein the processor comprises a plurality of processing devices in a distributed architecture and the memory stores the information so that the information is accessible to one or more of the plurality of processing devices.

\* \* \* \* \*

AMENDED CLASS ACTION ALLEGATION COMPLAINT    Exhibit "A"

## CERTIFICATE OF SERVICE

I, Rick Klingbeil, hereby certify that on June 2, 2010 I electronically filed the foregoing

pleading with the clerk of the court using the CM/ECF filing system which, to my understanding and

belief, will send notification of this filing to the following counsel for the plaintiffs at the electronic

mail addresses indicated:

| | |
|---|---|
| **Robert L. Aldisert** | **Julia E. Markley** |
| Perkins Coie, LLP | Perkins Coie, LLP |
| 1120 NW Couch Street | 1120 NW Couch Street |
| 10th Floor | 10th Floor |
| Portland, OR 97209-4128 | Portland, OR 97209-4128 |
| (503) 727-2056 | 503 727-2259 |
| (503) 727-2222 (fax) | (503) 727-2222 (fax) |
| raldisert@perkinscoie.com | jmarkley@perkinscoie.com |

**DATED:**  June 2, 2010.

**RICK KLINGBEIL, P.C.**

_____
Rick Klingbeil, OSB #933326
of Attorneys for Defendants
  Admitted *Pro Hac Vice*