1          IN THE UNITED STATES DISTRICT COURT

2            FOR THE DISTRICT OF OREGON

3   VICKI VAN VALIN, on behalf of )
    herself and all others        )
4   similarly situated within the )
    state of Oregon; NEIL MERTZ,  )
5   on behalf of himself and all  )
    others similarly situated     )
6   within the state of           )
    Washington,                   )
7                                 )
            Plaintiffs,           )   No. CV-10-557-ST
8                                 )
       vs.                        )
9                                 )
    GOOGLE INC., a Delaware       )
10   corporation,                  )   May 24, 2010
                                  )
11            Defendant.           )   Portland, Oregon
    _____)

12

13

14

15

16

17

18            **Preliminary Injunction Hearing**

19             TRANSCRIPT OF PROCEEDINGS

20       BEFORE THE HONORABLE MICHAEL W. MOSMAN

21        UNITED STATES DISTRICT COURT JUDGE

22

23

24

25

```
 1

 2                              APPEARANCES

 3

 4   FOR THE PLAINTIFFS:     Mr. Rick Klingbeil
                            Rick Klingbeil, PC
 5                           520 S.W. Sixth Avenue, Suite 950
                            Portland, OR 97204
 6

 7

 8   FOR THE DEFENDANT:      Mr. Robert L. Aldisert
                            Perkins Coie, LLP
 9                           1120 N.W. Couch Street, 10th Floor
                            Portland, OR 97209
10

11                           Mr. David J. Burman
                            Perkins Coie, LLP
12                           1201 Third Avenue, Suite 4800
                            Seattle, WA  98101
13

14

15

16   COURT REPORTER:        Bonita J. Shumway, CSR, RMR, CRR
                            United States District Courthouse
17                           1000 S.W. Third Ave., Room 301
                            Portland, OR  97204
18                           (503) 326-8188

19

20

21

22

23

24

25
```

```
 1                    (P R O C E E D I N G S)

 2            THE CLERK:  Your Honor, this is the time and place

 3   set for a preliminary injunction hearing on Case

 4   No. 10-557-ST, Van Valin, et al. v. Google Inc.

 5            Counsel, can you introduce yourself for the

 6   record.

 7            MR. KLINGBEIL:  Rick Klingbeil for the plaintiffs

 8   and potential class.

 9            MR. ALDISERT:  Rob Aldisert, Your Honor, for

10   defendant Google Inc.

11            And I'd like to introduce Dave Burman, my partner

12   from Seattle, who had -- is in the midst of filling out his

13   pro hac application, but we haven't quite got it in yet for

14   this.  And if -- with Your Honor's indulgence, he'll answer

15   any questions.  He's had a little bit more time to get up to

16   speed on this than I have.

17            THE COURT:  That will be fine.

18            MR. BURMAN:  Thank you, Your Honor.

19            THE COURT:  I understand from the parties you've

20   attempted to work out an agreement on some sort of

21   preservation of data and have been unable to do so; is that

22   right?

23            MR. KLINGBEIL:  That is correct, Your Honor.

24            THE COURT:  The question today appears to be not

25   if but how much, so I'm aware from something I've received
```

1    from Google -- I believe it's their response -- that they

2    are currently -- in fact, predating your complaint, have

3    taken actions to preserve a certain set of data contained in

4    hard drives.

5             What more than what Google is already doing are

6    you seeking?

7             MR. KLINGBEIL:  Your Honor, there are some

8    problems with what they've done, which I will get into in

9    just a minute.

10            THE COURT:  Well, I should add that in terms of

11   restraining orders, there are no problems with what they've

12   already done, there never are with restraining orders, since

13   I can't restrain what's already been done.

14            MR. KLINGBEIL:  Yes, Your Honor.

15            THE COURT:  So I need to know what you still want

16   that they're not proposing to do.

17            MR. KLINGBEIL:  Okay.  What we still want is for

18   this data in the form that it is now, which is an altered

19   form already, to be taken and honed on to a drive similar to

20   this one (indicating), $40 enclosure, $100 drive, holds a

21   trillion bytes, which is more than enough to hold all this

22   data here.  And we want two copies of that lodged with the

23   Court.

24            And here is why I want that.  As the Court is

25   probably aware -- but let me give a bit of background on

this -- copying data from one hard drive to another for

evidentiary purposes is insufficient.  As the Court probably

knows, data gets written, data gets changed, data gets

erased, and when we say stop, we want that data for

evidence, there may be some data on there that's perfectly

readable, and you can say, "Copy me the Jones file to my

hard drive," I can do that.  But if we're talking about the

Jones case, there's information on that disk that may have

been erased, for example, that's still there, it's just you

don't see it when you pull it up on your computer, but it's

still accessible.  Those things can be very critical to a

case like this.  I can spill off five or ten reasons why

that type of data may be critical to this case.

                THE COURT:  I'm familiar with that issue.

                MR. KLINGBEIL:  Okay.  Very well.

                Now, if you go to Mr. Stamos's declaration filed

just this morning, large problem here, big problem, and I

want to keep it from happening in the future.

                THE COURT:  I understand the big problem that

jumps out at one when you read it, and that's what I meant

by -- in terms of a restraining order.

                MR. KLINGBEIL:  Yes.

                THE COURT:  There may have been things lost.  I

can't solve that problem with a restraining order, and we're

only here on a restraining order.

```
 1          So I appreciate that you are concerned that the
 2   way things stand right now, you may not have access to
 3   everything you would have had access to had the preservation
 4   been done differently.
 5          MR. KLINGBEIL:  Yes, Your Honor.
 6          THE COURT:  So what you want to do about that now
 7   is request Google to take what and transfer it on to your
 8   hard drive -- or to a hard drive left with the Court?
 9          MR. KLINGBEIL:  Yes, Your Honor.
10          Well, the data as it now exists, and described in
11   paragraph 4 of Mr. Stamos, which is the files that -- the
12   United States file that Google has collected and moved from
13   one disk to another, in the present state they are on the
14   drive they are, what I'm asking for is for them to take two
15   drives like this (indicating) and make an exact clone of the
16   drive that he still has in his possession and lodge them
17   with the Court so that --
18          THE COURT:  He has a hard drive, I think it's
19   called U.S. hard drive or something like that?
20          MR. KLINGBEIL:  U.S. hard drive, that has the
21   United States data on it.
22          THE COURT:  And you want that hard drive simply
23   cloned twice?
24          MR. KLINGBEIL:  Yes, Your Honor.
25          THE COURT:  On to two different new hard drives?
```

1        MR. KLINGBEIL:  Yes, Your Honor.

2        THE COURT:  And left with the Court?

3        MR. KLINGBEIL:  Left with the Court so that in the

4    future, if we need to access them, we can make motions and

5    have orders from the Court.

6        THE COURT:  And that's because your concern is

7    that the -- what we're calling the U.S. hard drive may go

8    through some other transfer or data loss?

9        MR. KLINGBEIL:  I'm concerned about that.  I'm

10   also concerned about the part of his declaration where he

11   says that his understanding of what he is supposed to do

12   does not alter any of the payload data that's collected.

13   Our initial communications on the 14th with Google, the day

14   he was hired, was much broader than that:  Don't alter any

15   data you've collected from these vehicles from wireless, not

16   just the payload data, any other positioning data and so

17   forth.

18        So number one, his whole premise of what he's

19   storing is incorrect, and that concerns me.  To give an

20   example, we may have payload data, but if we don't have the

21   associated data giving us the identity of the wireless node

22   and the MAC address for the machine or other positional

23   data, we have no clue who he took it from.  So it all goes

24   together to formulate a position of where this was taken so

25   we can identify the person it was taken from.

1          So he's operating under a false premise to begin

2     with, and, you know, we're very, very disturbed that these

3     four original hard drives were destroyed after he made some

4     copies -- and I assume that's what the Court was referring

5     to earlier -- but there was no reason to destroy the

6     original drives because now all that potential other data is

7     gone.

8          THE COURT:  It wasn't -- just to be clear, there

9     wasn't no reason.  There was a reason.

10          MR. KLINGBEIL:  I'm sure there was a reason, yes.

11          THE COURT:  Not one that you like, but --

12          MR. KLINGBEIL:  Yes, Your Honor.  Okay.  I agree

13     with the Court there.

14          THE COURT:  All right.  Thank you.  I think I

15     understand what you want, and it's fairly clearly expressed,

16     so --

17          MR. KLINGBEIL:  One other thing, Your Honor.  I

18     just want to emphasize that we did on May 14, as my

19     declaration shows, send something to Google asking for

20     preservation.  The things that happened in his paragraph 4

21     happened the next day, after we'd already given them notice,

22     just for the Court's clarification.

23          THE COURT:  All right.  Thank you.

24          MR. KLINGBEIL:  Thank you, Your Honor.

25          MR. BURMAN:  Your Honor, Dave Burman.  Can you

1   hear me okay here or would you prefer --

2           THE COURT:  No, you're fine there.

3           MR. BURMAN:  Thank you very much for hearing me.

4   And obviously there's been a bit of a scramble on the Google

5   side.  Once Google management discovered that this mistake

6   had been made, they took immediate action to try to reassure

7   people that they were not going to use the data, and that

8   was given the highest priority.  Lawsuits were thought about

9   a little bit later.

10          These are not original hard drives that were

11  destroyed.  The data was on Google's servers, and to make

12  sure that they could reassure people that it would not be

13  used in their businesses, their immediate step was to take

14  it off of the servers and put it on four hard drives.  So if

15  we made a mistake in terms of the kind of metadata that

16  Mr. Klingbeil was concerned about, it was made before it

17  went to hard drives.

18          What Mr. Stamos has now made an exact copy of, but

19  has encrypted and secured, is an exact copy of whatever was

20  on the hard drives.  Nothing was lost, in his opinion, when

21  the copy was made.  But they wanted to segregate the U.S.

22  data from the data of the rest of the world because they

23  were getting requests from the relevant authorities in other

24  jurisdictions not just to take that data off of Google's

25  network but to go ahead and destroy it.

1          The U.S. data has not been destroyed.  There was

2     no intention to destroy that, and that was the subject of

3     the motion, was only payload data and only U.S. data.  That

4     crisis, that concern based upon statements made about

5     foreign data in reaction to foreign jurisdictions is now

6     gone.  We have told them that we will preserve all of the

7     U.S. payload data until we address the Court and

8     Mr. Klingbeil further.

9          In terms of the other discovery information, we

10    understand our discovery obligations.  We did get his

11    preservation letter on the 14th.  That data is being

12    preserved in place.  Most of that data is in the regular

13    business network of Google and it's going to remain there.

14    We're not going to alter it or destroy it.  We've got legal

15    holds out to all of the people that we could think of that

16    were relevant and took other steps to make sure that that

17    data was preserved.

18         We see no purpose to creating additional copies of

19    the U.S. data and lodging with the Court.  I think Mr. --

20         THE COURT:  The only purpose being argued is that

21    apparently either just after or contemporaneous with a

22    request to preserve data, you moved the data from the

23    original hard drive, the data went from a server to a hard

24    drive, you moved the data from that hard drive to another

25    hard drive in the possession of some sort of consulting

1    company.

2            MR. BURMAN:  Correct.

3            THE COURT:  And that occurred apparently --

4            MR. BURMAN:  Either on the 14th or the 15th.

5            THE COURT:  Let me finish my question.

6            MR. BURMAN:  I'm sorry.

7            THE COURT:  That occurred apparently the day after

8    you received some sort of request regarding preservation in

9    this case.  Is that right?

10           MR. BURMAN:  I don't know exactly when we received

11   it or exactly when that change -- or that copy was made.  I

12   think our point is that it's the same exact copying that he

13   wants.  He wants another copy, identical copy made.  And if

14   there was no problem with making another copy now, there

15   wouldn't have been any problem with making a copy then.

16   They're both identical copies.

17           THE COURT:  Well, I guess the shortest answer from

18   your opponent's side is that remains to be seen.  He wants a

19   copy of what you have now.  I don't believe it's his

20   position that what you have now is an exact copy of what you

21   had earlier.

22           MR. BURMAN:  I agree with you.  His position is it

23   might not be a copy of what was on the servers.  It is an

24   exact copy of what was on the temporary storage for some

25   number of days on that hard drive.

1        But --

2        THE COURT:  What's the cost to you, if any, of the

3   procedure suggested by plaintiffs here?

4        MR. BURMAN:  There's two costs, I believe, Your

5   Honor, or three really.  One is in any normal litigation,

6   there -- parties are trusted to preserve and maintain the

7   data until the normal discovery process occurs, and we

8   believe there's no reason to single Google out and treat it

9   in a way that is different than what the civil rules require

10  in terms of preservation of data, which is done by the

11  parties, not always lodging it with the Court.

12        THE COURT:  The only reason to mistrust Google in

13  any way here is if Google destroyed something on May 15th,

14  and it did destroy something on May 15th, more importantly

15  resulting in a loss of data.  And your contention is that it

16  is categorically impossible that a loss of any data

17  happened?

18        MR. BURMAN:  I don't have the technological

19  capability to second guess Mr. Stamos.  Mr. Stamos says he

20  made an exact copy but then encrypted it of the data that

21  was provided to him.

22        THE COURT:  Well, I guess it depends on an exact

23  copy of what.

24        MR. BURMAN:  Of what was on the hard drives that

25  he then made a decision to destroy so that there were no

1    extra unencrypted hard drives that would be out there

2    because of the concerns that various jurisdictions have, or

3    other people in other states besides Washington and Oregon

4    might have about access to this data.

5              THE COURT:  So concern number one is that you --

6    that it represents a sort of an undeserved mistrust?

7              MR. BURMAN:  Correct.

8              THE COURT:  Number two?

9              MR. BURMAN:  Number two is that there are -- this

10   lawsuit deals with purportedly or presumptively Washington

11   and Oregon residents.  There is other data on this, and

12   there may well be other lawsuits.  In fact, one has been

13   filed in California since this started.

14             Google's position is that it is in the -- it made

15   the mistake, it is in the best position to respond to

16   potentially conflicting demands and to address this Court at

17   the time that it might need to as to this data, but that

18   otherwise it should simply be held in the normal course and

19   subject to discovery, if that becomes appropriate, and that

20   Google has committed to the plaintiffs and now to the Court

21   that it is going to preserve this data until the plaintiffs

22   agree or the Court allows us to do something else.

23             THE COURT:  Thank you.

24             Number three?

25             MR. BURMAN:  Number three, the cost is de minimus.

1    We do agree with that, Your Honor.  We're not raising the

2    cost of making the additional copies in terms of the

3    financial cost.  There is some risk when you make additional

4    copies of some other access being obtained to those copies.

5    Because I presume that Mr. Klingbeil would want to either

6    have them unencrypted or want to have the encryption key,

7    our position is that we feel, now that this information has

8    been discovered, we feel the best course is to have one copy

9    of it, to have that secured and to make sure that the

10   encryption key is kept separate from it.

11        THE COURT:  The middle path, I suppose, is to

12   expand, per plaintiffs' request, the preservation function

13   of Mr. Stamos's company beyond payload data to something

14   broader.  Do you have any objection to that?

15        MR. BURMAN:  Well, we certainly have no objection

16   to satisfying our duties to preserve information under the

17   federal rules.  I don't believe it's appropriate to expand

18   that at this point.  That was not the request in the written

19   TRO motion.  There is nothing in there dealing with in some

20   way having a third party preserve other data, and I

21   technically don't know whether that might interfere with

22   Google operations.  The preservation request is so broad

23   that it would -- our interpretation of it is that it

24   requires us to make sure that a lot of e-mail is not

25   destroyed or calendared out of the system, and to take that

1  off of the -- all of that off of the Google network without

2  some sort of filtering to figure out what might be useful

3  for ongoing business of the company would, I think, possibly

4  create quite a hardship.

5              THE COURT:  All right.  Thank you.

6              Mr. Klingbeil.

7              MR. KLINGBEIL:  Your Honor, a couple things I

8  think I need to correct here.  Our request was very

9  specific.  It doesn't have anything to do with the e-mails

10 and so forth.  On page 2, I asked --

11             THE COURT:  Page 2 of what?

12             MR. KLINGBEIL:  Of my original motion and

13 memorandum in support of the TRO and preliminary injunction.

14 We speak to electronic data obtained from plaintiffs and

15 class members that Google currently possesses.  So we're

16 talking about the things that came from the Google Street

17 View, not e-mails and so forth.  It's a finite known --

18             THE COURT:  If I just went with your wording and

19 you're trying to sell that as not being very broad, I don't

20 know that you'd get there, because what you've just read to

21 me is that you want Google to maintain the electronic data

22 it obtained from plaintiffs and class members.

23             MR. KLINGBEIL:  Yes, through its Google Street

24 View vehicles.

25             THE COURT:  It doesn't say that, so that's what

you want, all electronic data it obtained through Google

Street View vehicles?

        MR. KLINGBEIL:  Yes, Your Honor.

        THE COURT:  From your plaintiffs?

        MR. KLINGBEIL:  Yes, Your Honor.

        THE COURT:  All right.

        MR. KLINGBEIL:  A couple other quick things, if I

could.  There is a California firm who is filing national

class.  I have spoken with them this weekend and they are on

all fours with what we're asking for here as well.

        THE COURT:  Meaning what?

        MR. KLINGBEIL:  Meaning taking all the national

data, putting it on a drive, lodging it with the Court,

where the Court has the encryption key and so forth.

        Their fear and mine is this also:  one drive, I

can drop this drive on the ground right now.  It will no

longer work.  I probably can't access most of the data.  I

can shuffle my feet on the carpet and touch the pins and

shock it, the data is gone.  It's very vulnerable to have

this data, I don't care how secure his outfit is, on one

drive, in terms of the drive can go bad.  I have that happen

in my office all the time.  It's just very, very -- what

shall I say?  It scares me to have all this data on one

drive in one place.

        THE COURT:  All right.  Thank you.

1    We are, of course, here on a temporary restraining
2  order.  We're not here to resolve questions that may come up
3  in a future time about whether anything nefarious happened
4  with transfers or not.  So I'm not intending to express any
5  view of any impropriety whatsoever yet.  That's not my
6  position here today.
7    Plaintiffs' duty here for the temporary
8  restraining order is to raise some legitimate concern -- I'm
9  not going to use the precise term of art here, but some
10 legitimate concern about the possible loss of data critical
11 to the case.  And I think, without having made everybody
12 flesh out all of the history and cases, I think we're all
13 familiar enough with this concept to be aware that virtually
14 any transfer can fail to pick up data that a plaintiff later
15 deems important.  Whether that happened between the server
16 and the first hard drive, we don't know, and that's not a
17 problem I can solve by a restraining order.
18    Whether that happened between the first hard drive
19 and the second hard drive seems far less likely, but again
20 that's to be resolved at a later date.
21    My question here today is whether there's any
22 serious risk that the current hard drive holding the U.S.
23 data will in some manner fail to preserve all of the data
24 plaintiffs believe critical to their case.  And I believe
25 plaintiff has made at least a showing of that possibility,

1   not through even a suggestion of anything untoward or

2   illegal by Google, but it could be through hard drive

3   failure, it could be through a misunderstanding between the

4   parties about what should be preserved.  Smart lawyers have,

5   to my understanding, spent the better part of a weekend

6   trying to come to an understanding about what should be

7   preserved and have been unable to do so.

8          And so with what I consider to be a fairly low but

9   existing showing of a possibility of irreparable harm, I

10  look to cost to Google here, and I've tried to make clear

11  here that the first cost, that this represents some sort of

12  black eye as to Google's performance to date or historically

13  is not a part of the consideration I'm making here today.

14  Rather, I prefer to see it as a possibility that data won't

15  be preserved that wasn't viewed as necessary for

16  preservation by Google but later is viewed as necessary for

17  preservation by plaintiffs.

18         I suppose in a very minor way there is this

19  question of putting all the eggs in one basket, so to speak,

20  preserving one hard drive, although that's solved by simpler

21  means than plaintiff has suggested here.

22         But because the cost is so low, because there is

23  some real concern that the parties will some day view the

24  data as having been inadequately preserved through current

25  means, I am going to require Google to make a clone twice on

new hard drives of the U.S. data for our current purposes,

temporary restraining order purposes; that those hard drives

will not go to plaintiffs, and in fact I expect down the

road that we'll have to resolve when, if ever, plaintiffs

use this method of obtaining discovery at the preliminary

injunction stage, if not earlier.

But I am going to require Google to make those two

cloned hard drives, with the appropriate access keys that

have been described in the moving papers thus far, and that

will obviate definitional problems about what the consulting

firm needs to preserve, since we'll have that in the cloned

hard drives.

I'm not expressing any view of what Google needs

to do with its business relationship with Mr. Stamos.  You

have other reasons, I assume, for continuing to look to him

for preservation, so I'm not -- this is not an attempt to

make his work unnecessary in any way.

So I hope this solution ends up being fairly

straightforward.  I agree with Google that it raises

concerns about whether this is the sort of default position

any time a hard drive is involved.  I don't intend for that

to be the case.  I am placing some reliance on the idea that

shortly after preservation was requested, perhaps not as

clearly as it could have been, but after preservation was

requested, the hard drive on which the preserved data was at

that point stored was shortly thereafter destroyed.  And

that fact, I think, separates this case from the more

run-of-the-mill case in which there is some other method of

preservation not necessitating this cloning procedure.

I will ask you on behalf of plaintiffs to submit a

precise form of temporary restraining order matching my

rulings here today.  I want to be clear I'm not restraining

or ordering any particular further behavior or, for that

matter, for my purposes any further preservation behavior,

since we'll have the two cloned hard drives.

I know Google intends to continue to follow,

independent of my ruling here today, its obligations under

the Federal Rules of Civil Procedure for preservation of

electronic data, and whatever happens in California or other

jurisdiction is of no moment to me here today.

So you can do that, I presume, by noon?

MR. KLINGBEIL:  Yes, Your Honor.

MR. BURMAN:  Your Honor, could I make one

suggestion?

THE COURT:  Yes, sir.

MR. BURMAN:  I'm not sure why two are necessary at

this time.  I assume we're entitled to keep the one that

Mr. Stamos still has that will be cloned.

THE COURT:  Yes.

MR. BURMAN:  If one is sufficient, I think we

1    could simply agree to a stipulation that would lodge that

2    one with the Court --

3              THE COURT:  Why do you care about the difference

4    between one and two?

5              MR. BURMAN:  Two is fine, Your Honor.  I just --

6    we do have some concerns about there being too many copies

7    of this data extinct, but if two is the Court's preference,

8    I think we can just agree to a simple order that lodges

9    those two with the Court.

10             THE COURT:  Let's do two for now, and I appreciate

11   your concerns about access, and of course it's lodged with

12   the Court, and I guarantee you it will collect dust here in

13   court.  No one will be accessing it here.  And that may save

14   us time down the road.

15             MR. BURMAN:  Does the Court want the access key at

16   the same time?  That will be obviously -- it's a separate --

17   we don't want to write it on the hard drive, of course.

18             THE COURT:  No.  I think the access key can await

19   the first opportunity for litigating the actual use of the

20   cloned hard drive that will be left with the Court.

21             MR. BURMAN:  Thank you.

22             THE COURT:  And just to be clear, although this

23   will require further briefing down the road when this first

24   comes up, my expectation is that we're going to look first

25   to the hard drive of Mr. Stamos, and through a normal sort

1    of bilateral discovery process between plaintiffs and

2    Google, and then we'll determine at some future point

3    whether that appears to be inadequate in some way.

4            So I know that it's easy to say that you don't

5    know what you don't know, but I am going to expect some sort

6    of showing to be made that what you get through a normal

7    bilateral discovery request and return relationship with

8    Google is somehow inadequate before we go to the extra step

9    of accessing the cloned hard drives left with the Court.

10           MR. KLINGBEIL:  I understand, Your Honor.

11           THE COURT:  And that's in part so that if the

12   record in this case becomes clear that this was in fact

13   unnecessary, then future courts will know that.

14           All right?

15           MR. BURMAN:  Thank you, Your Honor.

16           THE COURT:  Thank you all.  Good day.

17           THE CLERK:  This court is in recess.

18           (Proceedings concluded.)

19

20

21

22

23

24

25

--o0o--

I certify, by signing below, that the foregoing is a correct transcript of the record of proceedings in the above-entitled cause.  A transcript without an original signature or conformed signature is not certified.


/s/Bonita J. Shumway                    6/1/10
_____         _____
BONITA J. SHUMWAY, CSR, RMR, CRR        DATE
Official Court Reporter